# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 11, 2011 Session

## JAMES Q. HOLDER ET AL. V. WESTGATE RESORTS LTD.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Sevier County**
**No. 2004-0477-II      Richard R. Vance, Judge**

---

**No. E2009-01312-SC-R11-CV - Filed December 12, 2011**

---

During a trial of the plaintiffs' premises liability claim, the trial court excluded as hearsay a portion of the testimony of the defendant's expert. The expert would have testified that he consulted an authoritative source whose interpretation of the applicable building code was consistent with that of the testifying expert. The jury returned a verdict for the plaintiff, and the defendant appealed. The Court of Appeals held that the trial court erred because the expert's testimony was admissible pursuant to Tennessee Rule of Evidence 703. The Court of Appeals concluded that the trial court's error was harmless, however, and affirmed the judgment. We hold that the Court of Appeals improperly applied an amended version of Rule 703 that was not in effect at the time of trial. We hold that the trial court properly excluded as hearsay portions of the proffered testimony of the testifying expert. We vacate the judgment of the Court of Appeals and affirm the judgment of the trial court.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Vacated; Trial Court Affirmed**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

John M. Lawhorn and Matthew A. Grossman, Knoxville, Tennessee, for the appellant, Westgate Resorts Ltd.,a Florida Limited Partnership d/b/a Westgate Smoky Mountain Resort at Gatlinburg.

James H. Ripley, Sevierville, Tennessee, for the appellees, James Q. Holder and Laura C. Holder.

James Bryan Moseley, Nashville, Tennessee, pro se, as amicus curiae.

**OPINION**

## I.  Facts and Procedural History

James Holder sustained multiple injuries when he fell down a stairway while attempting to exit a condominium owned and operated by Westgate Resorts Ltd. ("Westgate").  Mr. Holder and his wife, Laura Holder, filed a complaint against Westgate in the Circuit Court for Sevier County alleging that the configuration of the stairs, the corridor at the top of the stairs, and the doorway through which Mr. Holder was attempting to exit the condominium constituted an unsafe condition.[1]  Mr. Holder further alleged that Westgate knew or should have known of the unsafe condition and that Westgate's failure to warn Mr. Holder or correct the condition caused his injuries.  Mrs. Holder asserted a claim for loss of consortium.

During a jury trial, the Holders and Westgate presented competing expert testimony concerning the corridor where Mr. Holder fell and its compliance with the applicable building code.  Westgate presented the expert testimony of James Horner II, the deputy building official for the City of Gatlinburg, that the corridor complied with the applicable code.  The trial court, however, excluded a portion of Mr. Horner's testimony that related to a telephone conversation with officials of the International Code Council, the body that drafted the building code at issue.

The jury returned a verdict finding Westgate ninety percent at fault and Mr. Holder ten percent at fault.  The jury assessed damages in the amount of $220,000,[2] which the trial court reduced by ten percent for the comparative fault attributed to Mr. Holder.  See McIntyre v. Balentine, 833 S.W.2d 52, 57 (Tenn. 1992) (discussing modified comparative fault in Tennessee); see also Tuggle v. Allright Parking Sys, Inc., 922 S.W.2d 105, 109 (Tenn. 1996) (discussing derivative loss of consortium claims for the purposes of comparative fault).  The trial court entered a judgment for the Holders in the amount of $198,000.

On appeal, a majority of the Court of Appeals held that the trial court erred by excluding Mr. Horner's testimony as to the instructions he received from officials of the International Code Council because his testimony was admissible pursuant to Tennessee Rule

---

[1] The Holders also brought suit against Westgate Smoky Mountain Resort at Gatlinburg Owners Association, Inc. but voluntarily dismissed these claims prior to trial.

[2] The jury awarded damages in the amount of $217,479.94 for Mr. Holder's claim and $2,520.06 for Mrs. Holder's claim.

of Evidence 703.[3]  Holder v. Westgate Resorts Ltd., No. E2009-01312-COA-R3-CV, 2010 WL 2889260, at *7 (Tenn. Ct. App. July 23, 2010).  The Court of Appeals nevertheless concluded that the error was harmless and affirmed the trial court's judgment.  Id.  We granted permission to appeal.

## II.  Analysis

The issue before us is whether the trial court properly excluded Mr. Horner's testimony relating to his discussion with officials of the International Code Council.  A trial court's ruling admitting or excluding expert testimony may be reversed only if the trial court abused its discretion.  Brown v. Crown Equip. Corp., 181 S.W.3d 268, 273 (Tenn. 2005).  A trial court abuses its discretion by applying an incorrect legal standard or by reaching an illogical or unreasonable outcome resulting in prejudice to the complaining party.  Id.

Mr. Horner testified extensively concerning the applicable building code and his interpretation of the code.  The Holders' expert had testified that the applicable building code required a landing width of forty-four inches.  Contrary to the testimony of the Holders' expert, Mr. Horner testified that the building code required a landing width of thirty-six inches.  Following this testimony, counsel for Westgate asked Mr. Horner whether he consulted any professional resources in his evaluation of this issue.  Mr. Horner replied, "To be perfectly honest with you, I felt that I was correct in my reading of it, but I did call the International Code Council and I spoke with them."  The trial court then sustained an objection to Mr. Horner's testimony and ordered that "the last question" be disregarded.  The trial court held a bench conference after the objection, but the bench conference is not a part of the record.

At the conclusion of Mr. Horner's testimony, the trial court conducted a hearing outside the presence of the jury.  During this hearing, the Holders stated on the record that they objected to Mr. Horner's testimony as hearsay because he "was attempting to refer to a conversation he had had with someone from another state who shared the same opinion that Mr. Horner had."  Westgate then made an offer of proof.  See Tenn. R. Evid. 103(a)(2).  The offer of proof states that Mr. Horner received instruction from officials at the International Code Council and that Mr. Horner and other experts in his field consult officials at the International Code Council and rely on their instructions as an authoritative resource for "the proper interpretation of" the code.  The offer of proof further states that Mr. Horner's measurement of the corridor "conformed to the instruction he received from" the

_____

[3] Judge Charles D. Susano, Jr., filed a dissenting opinion.

International Code Council.[4]  Westgate did not assert that Tennessee Rule of Evidence 703 was a basis for the admission of the evidence.[5]

We first address the trial court's conclusion that the proffered testimony was hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Tenn. R. Evid. 801(c).

The trial court sustained an objection to the question in which Mr. Horner was asked if he consulted any professional resources available to building code inspectors.  The question asked did not elicit hearsay testimony from Mr. Horner, who responded that he spoke to unnamed officials of the International Code Council.  As an expert, he was permitted to state that he consulted professionals in his field.  The trial court, however, instructed the jury to disregard "the question."

---

[4] In its entirety, Westgate's offer of proof stated:

The proof was excluded following a sustained hearsay objection by [plaintiff's counsel]. The proof that would have been offered through Mr. Horner was that Mr. Horner consulted certain professional resources available to building code inspectors to assist him in making the determinations that he made and for which he testified. He would have testified that he consulted professional representatives of the International Code Council, Birmingham, Alabama. He would have testified that he regarded this resource as authoritative and reliable in his field in that the International Code Council is responsible for drafting the building codes pertinent to the issues in this case, as well as the commentary to those codes. He would have testified that the consultation he would have received from that resource is something that he regularly does. From time to time he requires assistance, as do other members of his profession. He would have testified that information he would have received from this resource is of a type reasonably relied upon by members in his particular field in forming opinions regarding the proper interpretation of the standard building code. He would have testified that after making that contact, the manner by which he evaluated this landing area and the manner by which he measured this landing area, he received instruction on how to do that from his resource, and the way he did it conformed to the instruction he received from the [International Code Council], which drafted the code and content.

[5] It is arguable that the admissibility of this evidence pursuant to Rule 703 was waived because Rule 703 was not asserted as a ground for admission of the evidence at the time of trial.  See Williams v. Delvan Delta, Inc., 753 S.W.2d 344, 347 (Tenn. 1988) (holding a party waives consideration of admission of evidence when the record contains the incorrect grounds for admission); see also State v. Adkisson, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) ("[A]n appellate court will limit its decision to the ground asserted when the trial court made its ruling.").  We will address the issue, however, because both the majority and dissenting opinions of the Court of Appeals relied entirely on this rule in deciding this case.

The offer of proof indicates that Mr. Horner would have testified that the International Code Council is an authoritative resource relied upon by professionals in his field and that he regularly relies upon this resource when interpreting the code. This testimony is not hearsay because it is not an out-of-court statement. Tenn. R. Evid. 801(c). If Mr. Horner had been asked questions eliciting this testimony, his answers would have been appropriate foundation testimony.

The offer of proof also indicates that Mr. Horner would have testified that his measurements of the corridor "conformed to the instructions" of the unnamed officials of the International Code Council. If it was offered for the truth of the matter asserted, Mr. Horner's statement that other, out-of-court statements attributed to individuals at the International Code Council confirmed Mr. Horner's interpretation of the applicable code was hearsay. The trial court determined that the evidence was offered for the truth of the information provided to Mr. Horner. We conclude that the trial court did not err in determining that this testimony was hearsay.[6]

A determination that this statement was hearsay, however, does not end our analysis. Although generally inadmissible, hearsay is admissible as provided by the Tennessee Rules of Evidence or otherwise by law. Tenn. R. Evid. 802; see also Arias v. Duro Standard Prods. Co., 303 S.W.3d 256, 262 (Tenn. 2010). Neither of the parties in this case asserted that the hearsay exceptions found in Tennessee Rules of Evidence 803 and 804 are applicable. Westgate asserts on appeal that the hearsay testimony is admissible because Mr. Horner is an expert witness testifying as to the basis of his opinion.

Tennessee Rules of Evidence 702 and 703 address the qualification of experts and the permitted bases of their opinions. Tennessee Rule of Evidence 702 permits a witness who is qualified as an expert to provide opinion testimony if the witness's "scientific, technical, or other specialized knowledge will substantially assist the trier of fact . . . to determine a fact in issue." The trial court qualified Mr. Horner as a testifying expert based on his experience and training as the deputy building official for the City of Gatlinburg. In this capacity, he regularly applied the building code governing the corridor in which Mr. Holder fell. The trial court correctly determined that Mr. Horner's opinion was admissible to assist the jury in determining whether the configuration of the stairs, corridor, and doorway complied with the applicable code. See Brown, 181 S.W.3d at 274 ("The trial court, therefore, must determine

_____

[6] Following Mr. Horner's testimony, the Holders' expert conceded that Mr. Horner's interpretation was correct and that the code required the landing to be thirty-six inches wide. He also conceded that Mr. Horner "certainly seems to know his code requirements." The significance of the confirmation of the measurement by the International Code Council is therefore considerably reduced by the concession.

that the expert testimony is reliable in that the evidence will substantially assist the trier of fact to determine a fact in issue . . . .").

Tennessee Rule of Evidence 703 describes the types of evidence on which an expert may base an opinion. When the trial was conducted on February 11 and 12, 2009, Rule 703 stated,

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

More than four months after the trial, Rule 703 was amended to include a sentence stating, "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Tenn. R. Evid. 703 (effective July 1, 2009). The Court of Appeals applied Rule 703 as amended in its analysis of the issues in this case. Holder, 2010 WL 2889260, at *6-7. Although neither party raises this issue on appeal, we conclude that the Court of Appeals erred in applying a version of Rule 703 that was not in effect on the date of the trial and could not have been considered by the trial court.

We therefore apply the rule that was in effect at the time of trial. The interpretation of the rules of evidence is a question of law, which we review de novo. Cf. Thomas v. Oldfield, 279 S.W.3d 259, 261 (Tenn. 2009) (interpreting the Tennessee Rules of Civil Procedure). Rule 703 is designed to permit an expert witness, who by definition has useful scientific, technical, or other specialized knowledge, to base an opinion on the wide range of knowledge that he has developed in gaining his expertise.

Rule 703 provides that an expert opinion may be based on inadmissible evidence. An expert opinion based on inadmissible evidence is permitted if the facts or data on which the opinion is based are trustworthy and "of a type reasonably relied upon by experts" in the field. Tenn. R. Evid. 703; see State v. Lewis, 235 S.W.3d 136, 151 (Tenn. 2007) (permitting an expert to testify to an opinion based on inadmissible hearsay evidence).

However, the basis of an opinion, if not otherwise admissible, may be admitted only for the limited purpose of assisting the jury in understanding the opinion. Admission of

otherwise inadmissible foundation evidence to assist the jury in understanding the opinion should be rare and should be accompanied by a limiting instruction. See State v. Jordan, 325 S.W.3d 1, 54 (Tenn. 2010) ("Where an expert witness is referring to hearsay statements not otherwise admissible . . . the trial court should instruct the jury that the hearsay statements are to be used only for evaluating the expert witness's testimony and should not be relied on as substantive evidence."). According to the rule in effect at the time of the trial, any admission of the basis of an opinion for the purpose of assisting the jury in understanding the opinion was subject to the provisions of Tennessee Rule of Evidence 403.[7] See Tenn. R. Evid. 703 adv. comm. cmt. ("Unfairly prejudicial facts or data should be dealt with under Rule 403.").[8]

Turning to the facts of this case, the trial court prevented Mr. Horner from continuing his testimony concerning his call to the International Code Council. The offer of proof states that Mr. Horner would have testified that he received instruction from the International Code Council and that he conformed his evaluation to the instructions he received. Although this proffer does not directly state the substance of the instructions from the International Code Council, the testimony indirectly does so by confirming the method used by Mr. Horner. The trial court determined that the evidence was offered for the truth of the information provided to Mr. Horner and was therefore hearsay. As such, its admission was not to assist the jury in understanding Mr. Horner's opinion but to insert the opinion of another expert.[9]

Experts routinely consult other experts when forming their opinions. Rule 703, however, does not permit a testifying expert to act as the "mouthpiece" of a non-testifying expert by simply parroting the non-testifying expert's opinion. See Loefell Steel Prods., Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) (observing that Federal Rule of Evidence 703 does not permit "a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion"); see also Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d

---

[7] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403 (emphasis added).

[8] We observe that the 2009 amendment to Rule 703 changed the analysis under which inadmissible foundation evidence may be admitted to assist the jury in understanding the expert's opinion. The new standard is that evidence may be admitted only if the court determines that its probative value substantially outweighs its prejudicial effect. Tenn. R. Evid. 703.

[9] Because Rule 703 was not offered as a basis for the introduction of Mr. Horner's hearsay statements concerning the instructions he received, we cannot fault the trial court for failing to conduct a balancing test pursuant to Rule 403.

-7-

398, 409 (6th Cir. 2006) (construing Federal Rule of Evidence 703) ("Other circuits have squarely rejected any argument that Rule 703 extends so far as to allow an expert to testify about the conclusions of other experts."). The opinion to which an expert testifies must be his own.

### III.  Conclusion

We hold that a portion of Mr. Horner's testimony was inadmissible as hearsay.  We vacate the judgment of the Court of Appeals and affirm the judgment of the trial court.  Costs of this appeal are assessed against the appellant, Westgate Resorts Ltd., and its surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE